15 minutes per side. Mr. Crawford for a moment. Judge Strange, may it please the Court, my name is Gene Crawford on behalf of the United States. Your Honor, if I may reserve two minutes of rebuttal time. I'm sorry, two minutes? Yes, ma'am. Thank you. The Court should reverse the District Court's judgment in this private search case because the District Court applied the wrong Fourth Amendment test. When the local police officer in this case asked Mr. Lichtenberger's girlfriend to show him the child pornography images that she found on his computer, the District Court asked whether or not Mr. Lichtenberger's girlfriend was acting as a government agent. Respectfully, that was the wrong question. Under United States v. Jacobson, the Court should instead have asked whether or not this reexamination of the laptop computer involving the police officer was within the scope of the earlier search performed by Mr. Lichtenberger's girlfriend. In applying the facts as found by the District Court to that correct legal analysis, it becomes apparent that the District Court's judgment was in error. Could you tell me, before the officer went out and looked at the computer with the woman, he had already been out there once, right? That's correct, Your Honor, yes. And he knew what as a result of his being out there the first time. What knowledge had he gained in that first session? Your Honor, the first session was a response to a call for service, I believe it was an unwanted person's call. They went out, the officer would have, I observed the living arrangements, would have encountered Mr. Lichtenberger, learned that he had a warrant for failing to register as a sex offender, and then arrested him on that warrant. I think we made quite clear in the record through questioning the evidence at that time, no discussion of any computer or anything of that sort. And how did it come about that he went the second time? He knew that this guy was a, needed to register, he had a warrant for his arrest. Yes. And so when he went out the second time, what did he know before he went? Why would he be going out there the second time? What he was responding to another call from the girlfriend. And that call, I believe, came to the dispatcher and the dispatcher sent the same police officer out before. Your Honor, candidly, I don't recall from the record if the officer was told specifically what the call was about. I believe that he was. It was some indication that there was something on the computer, perhaps child pornography related. That what he was going out there to do was to look at the computer, I take it. He wouldn't have just gone back out there not knowing anything about why he was going, would he? Well, Your Honor, I suppose he would respond to a call for service, but I would have to, I believe it is in the record. Unfortunately, I'm sorry, Your Honor, I can't recall at this moment, but I do believe that he had some indication. If he was going out there to look at the computer, then why shouldn't he have gotten a warrant before he went? Well, Your Honor, I mean, we're talking about a local police officer here who's investigating a call for service, and I suppose initially it would be... He operates by the same rules as the FBI does. I mean, the Fourth Amendment doesn't distinguish between local and FBI agents. It would just seem that if he's going back out there to look at the computer, to go through the computer, then it was easy for him to get a warrant if that's what he was going to do, because obviously this fellow had an expectation of privacy in his computer. Well, I think at that time, Your Honor, he had already been frustrated, but I think just simply based on a call, at that point in time there probably was not enough information to get a warrant. It probably would have required him to go out and speak to her, interact with her, get some level of comfort about what she saw, if he was going to get probable cause to get a warrant at that time. Now, in all probability, talked to Ms. Holmes, gathered the information that she saw, that probably would have been enough to get a warrant. But, of course, 30 years in place now is a pretty well-established exception to the warrant requirement, and that's the private search doctrine in Jacobson. And, in fact, the principles there date back to the 20s with Bergdorfer's... Isn't that a little bit of the problem here, that you have a, what, a 1984 case that really does not recognize the changing technology issues? Is it applicable? Explain, give me your best argument for why you think Jacobson fits this circumstance. Your Honor, I actually draw the contrary conclusion. I think that the age of Jacobson shows how effective that test is. The scope test, which makes this unlike Riley and so many other cases, is a first real case that defines what the scope test is, was Walters. And that was a case that the government lost. And there are other more recent cases. Runyon is an example of how effective courts can apply the scope test to computer evidence to say, look, we can figure out what the scope of the private search was here. And we can say that certain evidence could be admissible or would not be required to be suppressed. But, in these other instances, the government has gone too far. And Chris... What about here? Then it's your burden to show that, where that scope fits in this case, right? Didn't she say she did not remember what images she had opened before? Your Honor, she did say that. In, in, as we've been in our brief history... How does that satisfy your burden to show that you're within the scope of the private search? Because, Your Honor, the scope test is defined by Jacobson is not about exact congruence when we're talking about images between what the private party and what the later police officer saw. It's about whether or not the police gained any material advantage by what they did. And I think if you read the transcript, it's quite apparent, and of course the district court found, that what the police officer was looking at and what Ms. Holmes was looking at were the same thing. Or certainly the same thing in terms of whether or not the police officer gained any meaningful advantage under Jacobson to make this sort of outside the scope. In fact, I believe at one point Ms. Holmes indicated that she saw, she looked at web history, other documents, and some approximately, I think she said 100 child pornography images, whereas the police officer only saw 4 or 5. And I think that makes, it supports the district court's findings even more, that this is quite limited. Your Honor, if I could provide... And I wanted to ask you, kind of along those lines, since the district court said, and it sort of, there was virtually no, there was absolutely rather no virtual certainty, that the officer was going to encounter the child pornography or the scope of what Ms. Holmes found in her view of the laptop, if we apply Jacobson in that context, don't the facts of this case basically contradict that? And moreover, given the, given what people are able to store on computers, how would you ever satisfy that virtual certainty test given the quantum of information that can be stored on the computer? Your Honor, respectfully, I don't believe virtual certainty is a test. I mean, it's difficult to make, difficult to understand what to make of the virtual certainty language in Jacobson itself. The test that's articulated by the court is scope and whether there's any material meaningful advantage gained by the police officers in their subsequent re-examination. I think that the virtual certainty language in Jacobson is probably best read as just kind of a case-specific comment about what was likely to be found and whether or not the DE agent was going to make a search that was within the scope specific to that case. And you said earlier that you think that notwithstanding the age of Jacobson, that the test articulated in Jacobson still is a good fit and probably, I think you said, the best fit for these facts. Is that correct? Absolutely, Your Honor. Chris is a perfect example. I mean, there you have a case where a private searcher found a few images and the police launched into the full forensic examination without a warrant. And that case was correctly decided. That evidence was suppressed. And if I could offer a variation on these facts, it would make this a much different case. Suppose, for example, that Ms. Holmes had looked at Mr. Lichtenberger's computer, opened the file folders, and simply saw a list of file names that were suggestive of the contents. She didn't actually see the images. It could be something else, but it just had a name of the file that suggested it was child pornography. And she stopped there and called the police officer out. The police officer came out, looked at the file names. We think that's fine. But let's say that Officer Houston said, well, let's go a step further. I want you to open those images so I can see them. I just want to confirm. That's too far. We wouldn't be here today if that were the case. That's Walters. That's a case where FBI agents knew what the labels of the films were, but took the extra step of actually viewing them. The Supreme Court said that that was too much. If that's what happened here, we wouldn't be here respectfully, Your Honor. I'm a little caught on the virtual certainty. I understand that that may be descriptive of the case, but isn't it also descriptive of when you need to recognize that you may not initiate this part of the search? Isn't it not just, here's what Jacobson had, but isn't it kind of the Fourth Amendment's requirement that before you step in to begin that search, you have a sense that what you are beginning the search for is contraband that is within the scope of what a private person has already looked at? Your Honor, certainly that's the way one chooses to read Jacobson. That's what we have here. I mean, I think if you look at Jacobson and what the DE agent was allowed to do himself, what the officer did here was far more respective of Mr. Lichtenberger's privacy rights than what the DE agent was set to do and what Jacobson authorized. Here, instead of looking through the computer himself, the officer asked the private searcher, show me what you found. Then that's the question of direction. I mean, doesn't that then lead us to whether it's a government agency? There is a direction to open it if it's not been opened before. Isn't that a little separate issue? Well, then it becomes an issue of scope. If you're talking about something that has been opened before, but of course the facts that the district court found, and I don't understand that there's a claim that they're clearly erroneous, is that there was no viewing of Holmes. But, Your Honor, the agency issue, I mean, whether there's government action in the subsequent government search is always going to be the case. That's what makes it a Jacobson test. Of course, the DEA agent in Jacobson, when he performed his search, of course he was a government agent doing the same. And of course, Ms. Holmes was acting on behest of the government when someone asked her to show the officer what she had found. But of course, because there's government action in this re-examination, it's neither here nor there. Because that, frankly, would be a question that Justice White would have asked in Jacobson, and which I think was necessarily rejected there. How does your argument fit with the Bright Line rule in Riley? I'm sorry, what case, Your Honor? The Bright Line rule in Riley. What's the difference between a smart phone and a computer? Your Honor, there is. I think the difference in Riley is, before Riley, there was no check. There was no test to contain or cabin sort of what police could do when it came to examining computers in a search incident to arrest. Here, there is a very effective check, a very effective deterrent that works quite well, and that is the scope test, which courts, I think, have proven they can employ quite effectively, and I think can be employed effectively here. In this case, I think it's one that falls on the permissible side of the line. The rest of my time has nearly expired, if you have no other questions. Thank you. Good morning, Your Honors. May it please the Court, my name is Melissa Salinas. I'm the counsel of record and supervising attorney in this case, and I would like to introduce the law student, Joel Bryant. Thank you. Good morning, Your Honors. May it please the Court, my name is Joel Bryant, and I represent the appellee, Aaron Lichtenberger, and we respectfully ask that the District Court be affirmed, because when Officer Houston directed Ms. Holmes to rehack Mr. Lichtenberger's laptop, he violated the Fourth Amendment. The government wrongly contends that Jacobson holds otherwise. As the Court has noted, Jacobson is a 30-year-old case about a cardboard box. It has very little to tell us about the privacy interest implicated in digital data on a laptop computer. Well, even though those instruments are different, the fundamental expectation of privacy at this point is to analyze the law, correct? Yes, and of course we start with Jacobson, but Jacobson, in fact, sets out meaningful limits on the scope of the private search exception, and those limits have been further defined by the Courts of Appeals over the last 30 years, as they've started to deal with computer search cases in the private search context. And when the Courts of Appeals have addressed those issues, they have consistently held and found that agency is a threshold question. That's a point that this Court has made in Bowers, in Robinson, and in Morgan, all published opinions of these cases, and it's an issue that other Courts of Appeals have also mentioned. And that's critical, because in the world that the government would have us live in, it's perfectly acceptable for the police to direct a trespasser, or a burglar, to go back into the area that that private searcher has already invaded for the police's benefits. We're not arguing that the government can't use an agent for law enforcement purposes, but when they do, they can't rely on the private search exception to get around the warrant requirement. Because allowing them to do so essentially makes the warrant requirement unnecessary. A warrant would never be required as long as an individual has already seen the information that the government wants to access. And that is not what Jacobson allowed, and it's not what this Court should allow today. We saw that in Bowers as a threshold matter. The Court noted that there was no agency relationship at the second stage of the search. And while the government objects to the term two-stage private search, that's simply a label of convenience that describes, as the government noted, what typically happens in these cases. Because there was no agency issue at stake in Jacobson does not mean that the Court's silence announced a rule allowing law enforcement to, in fact, use agents to get around the warrant requirement. And as the bench has noted, in the context of laptop computers, there's a heightened privacy interest, which the Supreme Court, of course, pointed out with respect to digital data on cell phones in Riley v. California, which is a unanimous decision of the Court, in which they noted that the digital data on cell phones is, in fact, more sensitive than even the contents that exist in a private home that police officers might find in searching there. And the government has just conceded that there's no meaningful difference between the cell phones at issue in Riley and the United States v. Camus, which has not been marked for publication yet, or, sorry, has not, a citation has not come out yet, but has been marked for publication, held that based on Riley, the vehicle exception to the warrant requirement does not allow searches of cell phones found in cars. And so we see that the courts of appeals have already begun to recognize that Riley requires digital data on portable personal devices be treated differently than traditional containers. How would that affect this case exactly? Riley holding, assuming it's as broad as you think it is, how exactly would that affect this case? That tells us, Your Honor, that absent exigency or some other exception to the warrant requirement, police are not authorized to use the, to rely on the private search exception to save the warrantless search of a portable personal, of the, sorry, of the digital data on a portable personal device. Because the privacy interests, which this Court recognized with respect to what we have in a traditional container, and so that they cannot be completely destroyed by a private search. The private search doctrine and Jacobson are premised on the idea that the expectation of privacy is completely destroyed by the private search. But in this case, and in certainly the vast majority of cases involving a laptop computer, that's simply not possible unless the private searcher does the sort of complete forensic examination that we would traditionally associate with law enforcement. You're saying that with regard to computers and private information on computers, that that's different and that should not be treated as a private search. Not that it shouldn't be treated as a private search, Your Honor, but we should recognize that the expectation of privacy with respect to all of the digital data on the computer is not destroyed by a limited private search. In this case, we don't have a complete forensic examination that would have... Well, doesn't that obliterate the private search doctrine as it applies to computers? With respect to digital data, Your Honor, just as the Supreme Court in Riley carved out a limitation on the search incident to arrest exception, we are asking the court to carve out a similar exception with the private search exception. And Riley, as a unanimous case of the Supreme Court, where they held that digital data is more sensitive even than a home, points the way here. In this court... And here what you have is the opportunity and, by argument of your opposing counsel, the actuality of a private search first. And I think Bowers recognizes that that initial search is the search that is at issue, correct? Well, if I understand your question, Judge Stranz, there's two aspects of it. With respect to Riley and the search incident to exception, the search incident to exception... To arrest. Search incident to arrest, thank you, exception, I think it's fair to say that that is a critical aspect of law enforcement and Fourth Amendment jurisprudence. It's at the core of what our police officers do every day. It's about officer safety as much or more about discovering evidence. And for the Supreme Court to tell us that the privacy interest in digital data outweigh the interest of officer safety articulated by the government in Riley and its companion cases is an extraordinarily strong signal about just how important that privacy interest is. I'm struggling with the conceptual distinction between a seizure incident to arrest and the search that your opposing counsel argues vitiates your privacy interest. Isn't there a distinction there? Can't you have Riley and the private search doctrine to exist together? Yes, you can certainly have that. And it brings us back to Bowers, which Your Honor mentioned. And Bowers tells us that the point of analysis for Fourth Amendment purpose is when the government officially invades the individual's privacy. We also see that in Jones and similar cases that tell us when the government physically intrudes for the purpose of gathering information, that is the Fourth Amendment search. I'm struggling a little bit with the two-tiered search. Is it the initial search by the private party or is it the secondary search when the government is present? It's the secondary search that we're concerned about because in this case, the seizure of the laptop is the fruit of the second search. Had there not been a second search with Officer we wouldn't be here today. The private search, the initial search, Ms. Holmes on her own didn't implicate the Fourth Amendment because there was no government action. The point of analysis at which we have to start is when did law enforcement invade the privacy? And then the private search doctrine allows the government to look back to prior conduct to see if the reasonable expectation of privacy has been dispelled. Before the officer went back out there the second time, did the officer know enough or is it your submission that the officer knew enough about what he was going to do when he got there that he should have gotten a warrant before he went out there or what? We firmly assert that Officer Houston should have gotten a warrant before he viewed the pictures. Even the ones that the private citizen had already viewed? Yes, Your Honor. Why? As the government has noted, she was clicking on random images. If she had printed out a picture and handed it to him and said, this is the image I saw, then the private search doctrine would save because we wouldn't be talking about digital data at that point and we would have both a virtual certainty that this is what she had already seen and we wouldn't have a scope problem because she had printed out the picture that she saw. And why isn't it sufficiently or effectively the same thing for a private searcher to say, I looked at this picture, you look at it. Surely the media is not the issue, whether I'm looking at a screen or holding a piece of paper. How can that create a meaningful distinction? We would have that with reference to the facts in United States v. Benoit, which is the published 10th Circuit case, where the officer arrived and the private searcher, without prompting, started to play the video for the officer that had prompted the call. And so while it wasn't a printout, all the officer was seeing was the suspect video. There was no random clicking of images. And so as the government has noted, Jacobson is not necessarily easy to understand or apply in these cases, not because the Supreme Court tossed off random comments, but because Jacobson imposes meaningful restrictions. That virtual certainty should be understood as a prospective restraint on what the police can do. So we would agree that it's a question of the evidence. It is a question of whether it is clear that the action of the government took place within the clear scope of what the private searcher had already done. If the court disagrees that Riley moves digital data outside the scope of the private search exception and then reaches the scope issue, the scope test certainly remains part of the private search doctrine. And there definitely is a scope problem in this case. Why do you win? If scope applies, if the real issue here is your reasonable expectation of privacy and whether that is gone when the government comes, how do you put your best argument for why you satisfy that test? Because it's not our test to satisfy, Your Honor. It's the government's burden. And that means the government has to put on evidence, if we're looking at the scope test, to show that their second search was within the scope of the first. And the government today has offered you an extreme mischaracterization of the findings by the district court at this point. Could I go back to the question that I had earlier asked about whether there is evidence sufficient in this case to indicate or to raise a clear inference that the officer, before he went back out the second time, had sufficient information to know that he was going to be going through someone's computer? There is certainly evidence in the record to support that inference. The district judge noted, Your Honor, that the testimony on exactly when Ms. Holmes told law enforcement, whether the dispatcher or Officer Houston, what her concerns were and specifically what she had saw, was somewhat inconsistent. And the district court did not offer us specific findings as to what exactly he believed was said by whom, to whom, and when. But there's no question that by the time Officer Houston started directing her to reboot the laptop and hack into it on his behalf, that he knew he was doing that for the purposes of viewing alleged child pornography. Is that a significant fact, what he knew, either before he went or once he got there, in connection with the Fourth Amendment problem? I see my time has expired. Thank you. It does matter in this case. As the district judge noted, there was no reason that he could not have applied for and perhaps, without conceding anything, gotten a warrant at that point. And that tells us that there was no exigency that would justify this, which is, I suspect, why the government has not relied on that line of argument here. I believe Judge Don will follow. I was going to be asking along the lines of what Judge Merritt asked, so I'm satisfied. Thank you. Thank you, Your Honors. Thank you. Judge Merritt, you'd asked earlier about what Officer Houston may have known before he went to the house. In Officer Houston's direct examination, I did find a testimony. Unfortunately, I didn't have time to go through the cross. There may be another comment in cross. But on his direct testimony, and this is page ID 252, Officer Houston said that, I was told by dispatch that he needed to go back to the residence because his girlfriend, Carly, had found some explicit pictures that she needed to talk to an officer about. If that is the sum of what he was told, I think certainly that would not be enough to get him a warrant without more description about explicit how, and elaborate a little more, at least to interview her and talk to her about what she had found. He didn't know that this was going to have to do with a computer? Is that what you're saying? He didn't have any reason to know, or no inference can be made, that he was going out there to go to take a look at a computer? Your Honor, it doesn't say that explicitly in the page that I mentioned, but I think you're making a fair inference. I mean, it would be, I think, a little surprising for an optimist. But you say that doesn't make any difference. The fact that he suspected or had strong reasons to believe that he was going to go out there and go through a computer, and the computer was where this guy was living, doesn't make any difference with regard to whether he should get a warrant or not. Your Honor, at that point in time, I try to think about how a warrant would be written, and I think it would be very hard to present a warrant that says, dispatch got a call, said there were some explicit pictures. I wouldn't think it would be too hard to write a search warrant that says what the facts are. Well, he'd been out there once before. He got a call to come back and look at the computer, or that's what he thought he was going to be doing. He would like a, you know. Of course, Your Honor. Is your point that you didn't have enough descriptive information about the content of the photos to frame the warrant? Because clearly he knew he was going to go and look at computer images. Well, Your Honor, simply from the dispatch call, no, I don't think there's enough for a warrant. But once he got there and was able to talk to her, he could have discovered enough information. Approved arresting the guy for being a pedophile. Well, it was a failure to register, Your Honor. Yeah, but that's based on the fact that he's a pedophile, right? I mean, that's what the warrant was. Prior convictions, yes. We don't evade obvious, you know, facts here. We've got to deal with the facts that we've got. I want to come back one time to your burden to show that it was within, that the search was within the scope of the private search that had vitiated the privacy interest. What is your best proof? And tell us how you have carried your burden to establish that what happened was within the scope. Your Honor, it begins with the legal test. And the legal test is whether or not the officer gained any meaningful advantage from his examination based on what the private searcher had done. I don't see anywhere where there's any sort of requirement that there's an exact congruence,  It's whether there's any meaningful advantage. And here what we learn from the facts is that the reasonable inference is that they were viewing the same file structure. They were viewing child pornography images. It would certainly be reasonable to conclude that what the officer saw was at least some subset of the pornography that was on the computer that was already compromised by the private search. Certainly district court thought so. It made quite clear that the viewing was limited to the offensive images. And I think from that one can conclude that Officer Houston did not gain any meaningful advantage over what he saw, regardless of whether there can be any precise proof as to what images were first seen and what images were then shown. There must be, but there must be some scope rule. Otherwise, you could go through a computer and just look at everything, and if you didn't find what you want, no harm, no foul. Certainly, Your Honor. That can't work. That's right, and that's proven in Runyon. That's proven in Crist. That when you launch off into a full forensic examination without a warrant, or when you have an array of physical media, of disks and whatnot, that the private searchers only looked at a few, but the government just goes wholesale and views everything, that's certainly a scope problem. And I also mentioned what could be a scope problem here, which would be very much like Walter's, which would be the case where perhaps only what Mrs. Holmes saw were file names and not pictures themselves, but then the officer came out and said, well, I want to see the pictures, show me the pictures, that's too far. That would be a clear application of the scope test, and we wouldn't be here if that's what happened in this case. Thank you. Thank you. We thank you both for your arguments.